E-FILED
Tuesday, 30 November, 2021  05:06:12 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **DESIGN IDEAS, LTD.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 20-cv-3204** |
| | ) | |
| **LOWE'S HOME CENTERS LLC,** | ) | |
| **HOME DEPOT U.S.A., INC.,** | ) | |
| **HOME DEPOT PRODUCT** | ) | |
| **AUTHORITY, LLC, and MENARD,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Defendants** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the motion (d/e 42) to dismiss or transfer Plaintiff's Second Amended Complaint filed by Defendant Lowe's Home Centers.  Also before the Court are the partial motion to dismiss filed by Defendants Home Depot U.S.A. and Home Depot Product Authority (d/e 44) and the partial motion to dismiss filed by Defendant Menards (d/e 54).  For the reasons stated below, each of the Defendants' motions is DENIED.

# I. BACKGROUND

On August 12, 2020, Plaintiff Design Ideas filed a Complaint (d/e 1) that alleged eight patent infringement claims against Lowe's Home Centers ("Lowe's").  Plaintiff alleged that Lowe's infringed eight of Plaintiff's patents by selling an expanded wire mesh container manufactured by Knape & Vogt ("K&V"), a nonparty, in Lowe's stores and online.  Plaintiff asserts that the K&V container is "virtually identical" to a container that Plaintiff sells exclusively to The Container Store under the "Elfa" brand (the "Elfa container") and that Lowe's sale of the K&V container infringes four of Plaintiff's "design patents" and four of Plaintiff's "utility patents." See d/e 1.  On December 8, 2020, Plaintiff filed an Amended Complaint (d/e 14) which added Home Depot U.S.A. and Home Depot Product Authority (together, "Home Depot") as Defendants and alleged that Home Depot was infringing the same eight patents by selling a similar K&V container.  On March 16, 2021, Plaintiff filed the pending Second Amended Complaint ("SAC"), which adds Menards as a Defendant and alleges that Menards's sale of a similar

K&V container infringes the same eight patents allegedly infringed by Lowe's and Home Depot.  See d/e 36.

Lowe's has moved to dismiss all eight of Plaintiff's claims against Lowe's under either Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, Rule 12(b)(1) for lack of subject-matter jurisdiction, or Rule 12(b)(3) for improper venue. See d/e 42.  In the alternative, Lowe's requests that the Court transfer this action in its entirety to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a).  See id.  Each of Lowe's arguments for dismissal and transfer is based on a contract that Plaintiff and Lowe's entered into in 2019 (the "DCBA Contract"). Plaintiff did not attach the DCBA Contract to the SAC or mention the DCBA Contract in the SAC.  Nevertheless, Lowe's asserts that the DCBA Contract should be considered because it is "central" to this action and contains a valid covenant not to sue which requires dismissal of Plaintiff's claims against Lowe's.  Lowe's also asserts that the DCBA Contract contains a valid forum-selection clause that this Court should enforce by transferring Plaintiff's action to the Western District of North Carolina.

Andy Van Meter, Plaintiff's President and co-founder, has filed an affidavit stating that Plaintiff agreed to the DCBA Contract as part of an "onboarding process" that Plaintiff underwent in 2019 and early 2020 when Plaintiff was attempting to sell Lowe's an "open wire shelving product" unrelated to the Elfa container at issue in the instant action.  See d/e 22, ¶¶ 10–13.  Mr. Van Meter's affidavit also states that the negotiations that gave rise to the DCBA Contract eventually fell through because the parties could not agree on a price for the offered open wire shelving product. See id., ¶¶ 14–16.  Plaintiff argues that the DCBA Contract is invalid, that the covenant not to sue contained in the DCBA Contract does not prohibit the instant action, and that the instant action is outside the scope of the DCBA Contract's forum-selection clause.

Home Depot and Menards (together, the "Secondary Defendants") have filed partial motions to dismiss under Rule 12(b)(6).  See d/e 44, 54.  The Secondary Defendants argue that Counts I, II, VII, and VIII of the SAC should be dismissed because the four design patents asserted in those counts are anticipated by prior art references and therefore invalid.  Plaintiff asserts that the

design patents in question are not anticipated and that the Secondary Defendants' invalidity arguments are premature and inappropriate for resolution on a Rule 12(b)(6) motion.

Plaintiff has responded to each of the Defendants' motions to dismiss. Each of the Defendants has filed a reply to one of Plaintiff's responses, and Plaintiff has filed surreplies to the Defendants' reply briefs. Home Depot has filed a filed a sursurreply brief responding to Plaintiff's surreply. As stated in the Court's Text Order of May 27, 2021, the Court considers the parties' surreply and sursurreply briefs only to the extent that doing so is appropriate and necessary to the resolution of the pending motions to dismiss and/or transfer the SAC.

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. Christensen v. Cty. of Boone, Ill., 483 F.3d 454, 458 (7th Cir. 2007). To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving the defendant fair notice of the claims. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor. Id. However, the complaint must set forth facts that plausibly demonstrate a claim for relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action. Id. Ordinarily, a court deciding a 12(b)(6) motion cannot consider materials outside the pleadings. See McCready v. eBay, 453 F.3d 882, 891 (7th Cir. 2006). However, a "narrow exception" to this general rule permits "documents attached to a motion to dismiss [to be] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir.1998).

A Rule 12(b)(1) motion asks a court to dismiss an action over which the court lacks subject-matter jurisdiction.  "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." United Phosphorus, Ltd. v. Angus Chem. Co., 322 F.3d 942, 946 (7th Cir.2003), overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc., 683 F.3d 845 (2012).  Motions to dismiss for lack of subject-matter jurisdiction fall into two general categories: "facial and factual attack[s.]"  Hay v. Ind. State Bd. of Tax Comm'rs, 312 F.3d 876, 879 n. 2 (7th Cir. 2002).  "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 443 (7th Cir.2009).  Factual challenges, by contrast, assert that "there is in fact no subject matter jurisdiction" for a court to hear a "formally sufficient" complaint.  Id. at 444 (quoting United Phosphorus, Ltd. v. Angus Chem. Co., 322 F.3d 942, 946 (7th Cir.2003)).  A court may properly "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject-matter jurisdiction

exists" to resolve a 12(b)(1) motion based on a factual challenge.  Id. However, in deciding a 12(b)(1) motion based on a facial challenge, courts "do[] not look beyond the allegations in the complaint, which are taken as true for the purposes of the motion."  Id.

Motions to transfer are governed by 28 U.S.C. § 1404(a), which provides that "a district court may transfer any civil action to any other district court where it might have been brought."  28 U.S.C. § 1404(a).  Transfer is appropriate when the moving party shows that "[1] venue is proper in the transferee district; [2] the transfer will serve the convenience of the parties and witnesses; and [3] the transfer will serve the interests of justice."  Sioux Steel Co. v. Sukup Mfg. Co., No. 17-CV-2193, 2018 WL 6492616, at *2 (C.D. Ill. Feb. 20, 2018).  A motion to enforce a contractual forum-selection clause is properly brought as a motion to transfer under § 1404(a).  Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 59 (2013).  Where a plaintiff's action falls within the scope of a valid forum-selection clause, transfer to the selected forum is indicated unless "extraordinary circumstances unrelated to the convenience of the parties" militate against transfer.  Id. at 62.

# III. ANALYSIS

## A.   The DCBA Contract Does Not Require Dismissal of Plaintiff's Claims Against Lowe's.

Lowe's has moved to dismiss the SAC under Rule 12(b)(6) for failure to state a claim, Rule 12(b)(1)[1] for lack of subject-matter jurisdiction, and Rule 12(b)(3) for improper venue.  Lowe's has also moved in the alternative to transfer this case to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a).

### 1.   A Forum-Selection Clause Cannot Be Enforced Through a Motion to Dismiss under Rule 12(b)(3).

Lowe's motion to dismiss under Rule 12(b)(3) for improper venue must be denied. Lowe's 12(b)(3) argument is that venue is improper in this district because the DCBA Contract contains a valid forum-selection clause designating the Western District of North Carolina as the proper venue for this action.  However, the Supreme Court explicitly held in <u>Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas</u>, 571 U.S. 49 (2013), that a forum-selection clause cannot be

---

[1] Lowe's also moves to dismiss for lack of subject-matter jurisdiction under Rule 12(h)(3). However, a motion to dismiss for lack of subject-matter jurisdiction is properly brought under Rule 12(b)(1) rather than Rule 12(h)(3).  <u>See</u> Fed. R. Civ. P. 12.

enforced by a motion to dismiss under Rule 12(b)(3).  <u>Id.</u> at 52.

Instead, "a forum-selection clause may be enforced by a motion to

transfer under § 1404(a)."  <u>Id.</u>  Lowe's has filed a motion to transfer

under § 1404(a), and the Court will consider Lowe's forum-selection

clause arguments in deciding that motion.

> **2. The DCBA Contract, Which Is Not Referred to in Plaintiff's Complaint, Cannot Be Submitted in Support of Lowe's Rule 12(b)(6) Motion.**

Lowe's argument for dismissal under Rule 12(b)(6) is that the

DCBA Contract contains a valid and enforceable covenant not to

sue in which Plaintiff agreed not to assert claims against Lowe's for

infringement of any of Plaintiff's intellectual property for a period of

time.  Plaintiff responds that the DCBA Contract was not referred to

in Plaintiff's complaint and, therefore, cannot be considered at this

procedural juncture unless the Court, pursuant to Rule 12(d),

converts Lowe's Rule 12(b)(6) motion into a motion for summary

judgment.

Typically, motions to dismiss brought under Rule 12(b)(6)

cannot include materials outside the pleadings.  <u>See</u> <u>McCready v.</u>

<u>eBay</u>, 453 F.3d 882, 891 (7th Cir. 2006).  However, a "narrow

exception" to this general rule permits "documents attached to a
motion to dismiss [to be] considered part of the pleadings if they are
referred to in the plaintiff's complaint and are <u>central</u> to [the
plaintiff's] claim." <u>Levenstein v. Salafsky</u>, 164 F.3d 345, 347 (7th
Cir. 1998).  Lowe's argues, citing <u>Rosenblum v. Travelbybus.com
Ltd.</u>, 299 F.3d 657 (7th Cir. 2002), that the DCBA Contract is
central to the SAC and can be considered despite not being
explicitly referred to in the SAC.

In <u>Rosenblum</u>, the plaintiff brought a claim against his former
employer for breach of an acquisition agreement governing the
purchase and sale of the plaintiff's business.  <u>See id.</u> at 659.  The
plaintiff in <u>Rosenblum</u> did not explicitly refer to an employment
agreement between him and his former employer in his complaint,
and yet the district court considered the employment agreement in
granting the defendant's 12(b)(6) motion.  <u>See id.</u> at 661.  The
Seventh Circuit held that the defendant had been entitled to
append the employment agreement because the defendant's
position was that the employment agreement and the acquisition

agreement were parts of a single instrument and that this
instrument was central to the plaintiff's complaint.  Id.

However, the instant action is distinguishable from Rosenblum
for two reasons.  First, the SAC alleges patent infringement claims,
rather than claims for breach of contract, and the DCBA Contract is
therefore not "central" to any of Plaintiff's claims against Lowe's in
the way that the contract in Rosenblum was central to the breach of
contract claim in that case.  Additionally, Lowe's has not argued
that there is a contract referred to in the SAC that the DCBA
Contract forms a part of.  While a defendant is entitled "to append
what it contends is the remainder" of an instrument central to a
plaintiff's complaint when the plaintiff has attached only part of the
relevant instrument, id. at 661–62, Lowe's has not contended that
the DCBA Contract is the remainder of any incomplete instrument
referenced in the SAC.  Because the DCBA Contract is not
referenced in or central to the SAC, the Court can consider the
DCBA Contract in the context of Lowe's 12(b)(6) motion only if the
Court elects to convert that motion into a motion for summary
judgment.  See Fed. R. Civ. P. 12(d); Batteast Const. Co. v. Pub.

Bldg. Comm'n of Chicago, 195 F. Supp. 2d 1045, 1051 (N.D. Ill. 2001). The Court declines to convert Lowe's 12(b)(6) motion into a motion for summary judgment at this time because the parties have not had an adequate chance to complete discovery. Accordingly, the Court will not consider the DCBA Contract in connection with Lowe's 12(b)(6) motion and Lowe's 12(b)(6) motion must be denied.

### 3. Plaintiff's Claims Against Lowe's Are Outside the Scope of the DCBA Contract's Covenant Not to Sue.

In addition to moving for dismissal under Rule 12(b)(6), Lowe's has also moved for dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction. Lowe's argues that, as "Plaintiff has agreed not to sue the Defendant for these types of controversies, there is no infringement, and the Court lacks subject matter jurisdiction." D/e 43, p. 6 (citing Revolution Eyewear, Inc. v. Aspect Eyewear, Inc., 556 F.3d 1294, 1297 (Fed. Cir. 2009)).

In deciding a Rule 12(b)(1) motion that raises a "factual attack" on the plaintiff's allegations, a court "may consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." Bazile v. Fin. Sys. of Green Bay, Inc., 983 F.3d 274, 279 (7th Cir. 2020). If a 12(b)(1) motion raises only a

"facial attack," however, evidence outside the pleadings may not be considered.  <u>Id.</u>  Lowe's has not stated whether its 12(b)(1) motion launches a factual or a facial attack on the SAC, and it is not necessary for the Court to make a determination on this point because Lowe's 12(b)(1) motion must be denied regardless of whether the DCBA Contract is considered.

The DCBA Contract contains a section entitled "Article 6: Product Information; Intellectual Property" which states that "During the Term and the two-year period after the Term, Vendor [Design Ideas] shall not assert a claim alleging that Lowe's or one of its Affiliate's purchase, sale, offer for sale, distribution, or promotion of products (including packaging) infringes Vendor's intellectual property rights."  D/e 49, § 6.1.  In other words, the DCBA Contract prohibits Plaintiff from filing patent infringement lawsuits concerning the sale of "products" for a period of more than two years.  Elsewhere in the DCBA Contract, the term "Products" is defined to mean "the goods Vendor [Design Ideas] sells."  <u>Id.</u>, § 13.1. The allegedly infringing products in this action were sold to Lowe's by K&V, and not by Plaintiff.  Plaintiff argues that the covenant not

to sue does not apply to the instant action because the term
"products," as it is used in the covenant not to sue, refers only to
goods sold by Plaintiff.

Lowe's response relies on the fact that the defined term
"Products" is spelled with a capital "P" in the "definitions" section of
the DCBA Contract, see id., § 13.1, while the covenant not to sue
uses the word "products" with a lowercase "p," see id., § 6.1.  Lowe's
argues that the lowercase "p" indicates that the word "products" is
used in its general, everyday sense in the covenant not to sue,
rather than according to the more limited definition provided in the
DCBA Contract's definitions section.  See d/e 67, p. 3.  According to
Lowe's, the K&V containers are "products" even if they are not
"Products."  See id.

Plaintiff has submitted an affidavit from Andy van Meter, the
President and co-founder of Design Ideas.  See d/e 22.  This
affidavit states that Plaintiff approached Lowe's in 2018 to sell
Lowe's an "open wire shelving product."  This shelving product was
not similar to the Elfa container, and Plaintiff never contemplated
selling the Elfa container to Lowe's.  D/e 22, ¶¶ 9–10.  Plaintiff

executed the DCBA Contract as part of an "onboarding process" to become a Lowe's vendor, in order to facilitate the potential sale of the shelving products, but the sale was never finalized because Plaintiff and Lowe's could not agree on the price Lowe's would pay for the shelving products.  Id., ¶¶ 11–14.  The affidavit further states that Mr. Van Meter's understanding of the covenant not to sue in Article 6 of the DCBA Contract was that "the specific products we actually sold to Lowe's, not every product we make, would have been free of any intellectual property claims by us against Lowe's, including for two years after the agreement ended."  Id., ¶ 20.  Lowe's has not disputed any of the relevant factual assertions in the Van Meter affidavit, although Lowe's did file a motion to strike the Van Meter affidavit pursuant to Rule 12(f), which motion the Court denied on September 27, 2021.[2]

North Carolina law governs the interpretation of the DCBA Contract.  See d/e 49, § 12.7.  Under North Carolina law,

---

[2] As Lowe's noted in the memorandum of law (d/e 43) filed in support of Lowe's motion to dismiss the SAC, the Court may "look beyond the jurisdictional allegations of the Complaint and view whatever evidence has been submitted on the issue" to determine whether subject-matter jurisdiction exists.  D/e 43, p. 7 (quoting Alicea-Hernandez v. Catholic Bishops of Chicago, 320 F.3d 698, 701 (7th Cir. 2003)).  Consideration of the Van Meter affidavit for the purpose of deciding Lowe's motion to dismiss for lack of subject-matter jurisdiction is, therefore, appropriate.

"[i]nterpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." State v. Philip Morris USA Inc., 618 S.E.2d 219, 225 (N.C. 2005).  Furthermore, ambiguity in a contract is construed against the party who drafted the contract.  Wells Fargo Ins. Servs. USA, Inc. v. Link, S.E.2d 458, 469 (N.C. 2019). According to the uncontradicted assertions in the Van Meter affidavit, Lowe's drafted the DCBA Contract and offered it to Plaintiff on a "take it or leave it" basis.  D/e 22, ¶ 12.  Therefore, for Lowe's to prevail on its argument as to the meaning of "products," the lack of capitalization of "product" in § 6.1 of the DCBA Contract must unambiguously show that Plaintiff intended to sign away all rights to sue Lowe's for any infringement of Plaintiff's intellectual property for a period of more than two years.

This result would allow Lowe's to sell carbon copies of Plaintiff's entire catalog during the protected period.  Plaintiff argues that this result would be absurd and unconscionable.  See Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC, 784 S.E.2d 457, 463 (N.C. 2016) (referencing rule that

constructions of contracts that lead to "plainly . . . absurd result[s]"
are disfavored).   Lowe's argues that this result is not absurd or
unconscionable because the covenant is time-limited and because
Plaintiff would still be free to sue the manufacturers of the
infringing products, though not Lowe's itself.  See d/e 67, p. 4 n.2.

Regardless of whether the construction advanced by Lowe's
rises to the level of absurdity or unconscionability, it is not the best
available interpretation.  Lowe's has not cited to any case from any
jurisdiction in which an uncapitalized letter at the beginning of a
defined term carries the kind of interpretive weight that Lowe's asks
the Court to assign to the lowercase "p" in "products."  But see
Tompkins v. Cent. Laborers' Pension Fund, No. 09-CV-4004, 2011
WL 3349839, at *7 (C.D. Ill. Aug. 3, 2011) aff'd, 712 F.3d 995 (7th
Cir. 2013), and aff'd, 712 F.3d 995 (7th Cir. 2013) (finding that
single uncapitalized occurrence of defined term carried the same
meaning as the defined term); Hot Rods, LLC v. Northrop Grumman
Sys. Corp., 242 Cal. App. 4th 1166, 1181 (2015) ("While the word
'claim' in section 16.2 is not capitalized, it is nonetheless a defined
term in the agreement and we interpret it accordingly.").  The DCBA

Contract is a "Digital Commerce Buying Agreement," an "agreement to memorialize the terms governing Lowe's purchase of Products from Vendor [Design Ideas]." D/e 49, p. 2. Every Article of the DCBA Contract other than Article 6 concerns the sale of Plaintiff's Products to Lowe's. See, e.g., id., §§ 1–3 (setting conditions of processing of orders from Plaintiff by Lowe's, delivery of Products from Plaintiff to Lowe's, and negotiation of prices for orders from Plaintiff by Lowe's). The majority of Article 6 itself is also concerned with the sale of "Products," with a capital "P." See id., § 6.1 (authorizing Lowe's to sell Plaintiff's "Products" and then stating that Plaintiff agrees not to sue Lowe's for patent infringement involving "products"). It is a "sound rule of construction that where a word has a clear and definite meaning when used in one part of a . . . document, but has not when used in another," the word's meaning is presumed to be consistent. Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012) (quoting Herbert Broom, A Selection of Legal Maxims 443 (Joseph Gerald Pease & Herbert Chitty eds., 8th ed. 1911)).

Moreover, the word "products" is not used in a way consistent with the meaning suggested by Lowe's anywhere outside of Article 6, while the defined term "Products" appears dozens of times throughout the DCBA Contract.  No careful drafter would provide a narrow definition for "Product," use the term consistently throughout the DCBA Contract, and then include one anomalous usage under a different definition with only a single uncapitalized letter to signal the change.  Nor is it realistic to suppose that the parties understood a contract otherwise exclusively concerned with the sale of Plaintiff's Products to Lowe's to also include blanket immunity from unrelated infringement claims.

Lowe's argues that Plaintiff's interpretation of Article 6 renders the covenant not to sue "a nullity" because "Products supplied by Plaintiff cannot possibly infringe Plaintiff's own patents."  D/e 67, p. 6.  Lowe's is correct that Plaintiff would have been prohibited from "asserting its patent against Products it sells to Lowe's" even without the covenant not to sue.  But the covenant does not refer to "patents," but rather to "intellectual property rights" generally.  The covenant prohibits any claim asserting that "purchase, sale, offer

for sale, distribution, or promotion of products (including packaging)" infringes Plaintiff's "intellectual property rights." D/e 49, § 6.1.  This language allows Lowe's to use Plaintiff's trademarks and/or copyrights while advertising or distributing Products.  Therefore, Plaintiff's interpretation of the DCBA Contract does not render the covenant to sue superfluous.

Additionally, the covenant not to sue appears in the same paragraph as an authorization for "Lowe's to advertise, offer to sell, and sell Products on Lowe's digital sales channels" and a license for Lowe's to use trademarks and other intellectual property rights relating to "images, models, or recordings of the Products." Id.  In this context, the only sensible reading of a ban on intellectual property claims involving "Lowe's . . . purchase, sale, offer for sale, distribution, or promotion of products (including packaging)" is that it, like the other provisions in Article 6, is intended to protect Lowe's from lawsuits over the use of images of Products and trademarks and copyrighted materials associated with Products in the course of packaging, distributing, and advertising products.

For all of these reasons, the Court finds that the word "products" in § 6.1 of the DCBA Contract clearly and unambiguously refers to Products sold by Design Ideas.  In the alternative, the Court finds that the inconsistent capitalization of "products" renders § 6.1 ambiguous and that this ambiguity is construed against Lowe's.  In either case, the DCBA Contract's covenant not to sue does not deprive this Court of subject-matter jurisdiction over Plaintiff's claims against Lowe's.

Lowe's also argues that the Court lacks subject-matter jurisdiction because the DCBA Contract's forum-selection clause provides that "The courts in Charlotte, North Carolina have exclusive jurisdiction" over all "disputes arising from, or related to, this agreement."  D/e 49, § 12.7.  For the reasons discussed below in the context of Lowe's motion to transfer, the Court finds that the instant action is outside the scope of the forum-selection clause. Therefore, the forum-selection clause does not deprive this Court of subject-matter jurisdiction.

**B.      Lowe's Has Not Shown that Plaintiff's Action Should Be Transferred to the Western District of North Carolina.**

**1.      Plaintiff's Claims Are Outside the Scope of the DCBA Contract's Forum-Selection Clause.**

Lowe's has also moved in the alternative for transfer of this action, including Plaintiff's claims against the Secondary Defendants, to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a).  Ordinarily, courts decide motions to transfer under § 1404(a) by performing a discretionary balancing of public and private interests involving separate inquiries into: (1) whether venue is proper in the transferor and transferee courts; (2) the convenience of parties and witnesses; and (3) the interest of justice. Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d 973, 977 (7th Cir. 2010).  This analysis changes, however, when a valid forum selection clause applies to the dispute in question.  See Atlantic Marine, 571 U.S. at 63.  The Supreme Court held in Atlantic Marine that "when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum,'" transfer is almost always appropriate.

Id. (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988)).

Lowe's argues that its motion to transfer should be analyzed under Atlantic Marine because the DCBA Contract contains a forum-selection clause stating that: "The courts in Charlotte, North Carolina, have exclusive jurisdiction over all disputes and Vendor [Design Ideas] hereby consents to the jurisdiction of those courts." D/e 49, § 7.1.  But Atlantic Marine's transfer analysis applies only when the parties have entered into a forum-selection clause that is "contractually valid" and "represents the parties' agreement as to the most proper forum."  Atlantic Marine, 571 U.S. at 63.  A forum-selection clause represents an agreement as to the proper forum for the claims at issue only when the claims fall within the scope of the clause.  See Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993); Houston Cas. Co. v. Thomas Linderman Graham, Inc., No. 17-CV-40, 2017 WL 3172415, at *2 (M.D.N.C. July 25, 2017).

"'[T]he body of law selected in an otherwise valid choice-of-law clause' governs the interpretation of a forum-selection

clause." <u>Queen City Pastry, LLC v. Bakery Tech. Enterprises, LLC</u>,
No. 14-CV-143, 2015 WL 3932722, at *3 (W.D.N.C. June 26,
2015) (quoting <u>Martinez v. Bloomberg LP</u>, 740 F.3d 211, 218 (2d
Cir. 2014)).  Here, the DCBA Contract selects North Carolina law,
<u>see</u> d/e 49, § 12.7, so North Carolina law governs the question of
whether Plaintiff's claims are within the scope of the forum-
selection clause.  <u>See</u> <u>Houston Cas. Co.</u>, 2017 WL 3172415, at *2.

Here, the forum-selection clause states that "[t]he courts in
Charlotte, North Carolina have exclusive jurisdiction over all
Disputes and [Design Ideas] hereby consents to the jurisdiction of
those courts." D/e 49, § 12.7.  The term "Disputes" is defined to
include "all disputes arising from, or related to, this agreement,
including, without limitation, contract, tort, statutory, and equity
disputes." <u>Id.</u>  In other words, the forum-selection clause applies to
the instant action if the action "aris[es] from, or relate[s] to," the
DCBA Contract.

The core example of a claim arising out of or relating to a
contract is a claim for breach of the contract, but forum-selection
clauses are "interpreted broadly and can encompass claims other

than breach of contract," <u>see</u> <u>Arion, LLC v. LMLC Holdings, Inc.</u>, No. 18-CV-5904, 2018 WL 6590533, at *3 (N.D. Ill. Dec. 14, 2018), where a plaintiff attempts to "get out from under the forum-selection clause" by pleading a claim other than breach of contract that nevertheless "concern[s] the contractual relationship between the parties." <u>Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.</u>, 364 F.3d 884, 889 (7th Cir. 2004). However, a "significant relationship" must exist between the dispute and the contract at issue for the dispute to arise out of or relate to the contract. <u>Long v. Silver</u>, 248 F.3d 309, 316 (4th Cir. 2001). North Carolina courts have held that claims "aris[e] out of or relat[e] to" a contract when the conduct giving rise to the claims "occurred in connection with, or as a part of, the formation of, performance under, or breach of the contract." <u>ELJ, Inc. v. Jefferys</u>, 763 S.E.2d 18, at *2 (N.C. App. 2014) (quoting <u>Rodgers Builders, Inc. v. McQueen</u>, S.E.2d 726, 731 (N.C. App. 1985)).

In <u>ELJ, Inc. v. Jefferys</u>, 763 S.E.2d 18 (N.C. App. 2014), the plaintiff sued the defendant for defamation, alleging that the defendant had made defamatory comments about plaintiff while the

two were competing for construction bids.  Id. at *1.  The parties were both contractors in the construction industry and had previously worked together on a construction project.  Id.  In connection with that earlier project, the parties had signed a contract containing an arbitration clause requiring arbitration of "[a]ny claim arising out of or related to" their construction contract. Id.  The defendant moved to compel arbitration of the plaintiff's defamation claims on the basis of the arbitration clause, and the motion was denied.  Id. at *1–*2.  The Court of Appeals of North Carolina held that, even if the allegedly defamatory statements were about the plaintiff's performance on the relevant project, the plaintiff's defamation claims did not arise out of or relate to the parties' contract.  Id. at *3.  The ELJ court held that "[t]he only evident relevance" of the earlier project to the defamation claims was to "explain how the parties knew each other prior to the later bids."  Id. at *3.

Here, the conduct giving rise to Plaintiff's claims is Lowe's sale of the allegedly infringing K&V containers.  According to the uncontradicted assertions in the Van Meter affidavit, the DCBA

Contract was executed in 2019 as part of an ultimately unsuccessful series of negotiations regarding the potential sale of a line of products not at issue in this case.  Lowe's has not attempted to establish any connection between the DCBA Contract and the K&V containers and has not suggested that the DCBA Contract bears any significant relationship to the patents asserted in the SAC.  Like the contract in <u>ELJ</u>, the DCBA Contract relates to the instant action only in that it concerns one prior interaction between the two parties to the instant dispute.  Plaintiff's patent infringement claims do not arise under the DCBA Contract or relate to the formation of, performance under, or breach of the DCBA Contract.  Accordingly, Plaintiff's claims are outside the scope of the DCBA Contract's forum-selection clause.

## 2. Lowe's Has Not Shown that the § 1404(a) Factors Favor Transfer.

Because the parties have not pre-selected a forum for Plaintiff's claims, the <u>Atlantic Marine</u> analysis does not apply to Lowe's transfer motion.  Instead, the ordinary § 1404(a) transfer analysis applies, and the Court weighs "the convenience of parties and witnesses" and "the interests of justice" to evaluate whether

transfer is appropriate.  Rsch. Automation, 626 F.3d at 978.  "[T]he moving party bears the burden of demonstrating 'that the transferee forum is clearly more convenient.'"  Body Sci. LLC v. Bos. Sci. Corp., 846 F. Supp. 2d 980, 991 (N.D. Ill. 2012) (quoting Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219–20 (7th Cir.1986)).  Here, Lowe's has not shown that the Western District of North Carolina is clearly more convenient for the parties or witnesses and has not shown that the interests of justice favor the Western District of North Carolina.

In assessing the convenience of the parties, a court considers four factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; and (4) the convenience of the parties and witnesses.  Here, the first factor, Plaintiff's choice of forum, controls.  Lowe's has not argued that more of the events material to this action took place in North Carolina than in Illinois or that relevant sources of proof may be more easily accessed in North Carolina.  See Rsch. Automation, 626 F.3d at 978.  While Lowe's argues that North Carolina is as convenient for parties and witnesses as Illinois, only one of the

three Defendants in this matter is headquartered in North Carolina.
Lowe's has not suggested that either Home Depot or Menards has
any particularly strong connection to North Carolina.  In the
absence of any showing that the convenience of parties or witnesses
favors North Carolina, the Court declines to disturb Plaintiff's
choice of forum.  See Deb v. SIRVA, Inc., 832 F.3d 800, 806 (7th
Cir. 2016) ("[U]nless the balance is strongly in favor of the
defendant, the plaintiff's choice of forum should rarely be
disturbed.").

The interests of justice also weigh strongly against transfer.
The interests of justice are served by "efficient administration of the
court system." Rsch. Automation, 626 F.3d at 978.  Allowing cases
that involve some of the same parties, seek the same remedy, and
concern similar legal and factual issues to be litigated in different
districts does not serve the efficient administration of the court
system.  See Aliano v. Quaker Oats Co., No. 16 C 3087, 2017 WL
56638, at *3 (N.D. Ill. Jan. 4, 2017).  The instant action bears
substantial similarities to another case in this district, Design Ideas
v. Target, No. 20-CV-03231, in which neither party has requested

transfer.  Furthermore, transfer of this case would require either severing Plaintiff's claims against Lowe's from the virtually identical claims against the Secondary Defendants or else transferring the Secondary Defendants to North Carolina along with Lowe's.  Either option would create duplicative litigation and would be an inefficient use of scarce judicial resources.  Accordingly, the Court finds that the Central District of Illinois is the appropriate venue for the instant action.

**C.    The Invalidity Defenses Raised by the Secondary Defendants Are Premature.**

The Secondary Defendants have each filed a partial motion to dismiss under Rule 12(b)(6).  Both Home Depot and Menards argue that Counts I, II, VII, and VIII of the SAC should be dismissed because the asserted design patents are invalid as anticipated.  Menards also argues that its products do not infringe on the asserted patents because Menards's products do not include "seamless" corners.  See d/e 54, ¶ 2.

Menards has forfeited its seamless-corners argument.  Menards's 12(b)(6) motion (d/e 54) contains only two brief sentences explaining the nature of its seamless-corners argument,

and the supporting memorandum of law (d/e 65) does not mention the argument at all.  An argument presented without any supporting authority or reasoning is "merely an assertion which does not sufficiently raise the issue to merit the court's consideration."  Alberici Constr., Inc. v. Wrigley, No. 08-CV-2164, 2009 WL 10685153, at *3 (C.D. Ill. Feb. 12, 2009).

As the Secondary Defendants' 12(b)(6) motions and supporting briefs are substantially identical except with respect to Menards's inclusion of the seamless-corners argument, the Court analyzes both motions together.

Plaintiff alleges that each of the Defendants has infringed eight of Plaintiff's patents, including four "design patents" and four "utility patents."  Generally, a "utility patent" protects the way an article is used and works, while a "design patent" protects the way an article looks.  Manual of Patent Examining Procedure § 1502.01 (9th ed. Rev. Jan. 2018).  A design patent "protects the non-functional aspects of an ornamental design as seen as a whole and as shown in the patent."  Amini Innovation Corp. v. Anthony Cal., Inc., 439 F.3d 1365, 1370 (Fed. Cir. 2006).

A design patent is not valid unless it is "new."  35 U.S.C.
§ 171(a).  A design patent is "anticipated," that is, invalid because it
is not new, "if, in the eye of an ordinary observer, giving such
attention as a purchaser usually gives," the design is "substantially
the same" as a prior art reference.  Samsung Electronics Co., Ltd. v.
Apple Inc., 137 S. Ct. 429, 432 (2016) (quoting Gorham Mfg. Co. v.
White, 81 U.S. 511, 525 (14 Wall.) (1871)); see Int'l Seaway Trading
Corp. v. Walgreens Corp., 589 F.3d 1233, 1237 (Fed. Cir. 2009)
(holding that the ordinary observer test is the only test for
anticipation).

Here, the Secondary Defendants' 12(b)(6) motions argue that
the four design patents asserted in the SAC are anticipated and
therefore invalid.  Each of the four challenged Design Ideas patents
claims priority to the filing date of an earlier Design Ideas patent
application.  Patent No. D856,678 (the "D'678 Patent") and Patent
No. D895,291 (the "D'291 Patent") claim priority to a patent with a
filing date of October 31, 2008.  Patent No. D847510 (the "D'510
Patent") and Patent No. D624,753 (the "D'753 Patent") claim priority
to a patent with a filing date of February 27, 2003.  The Secondary

Defendants argue that the D'678 and D'291 Patents are invalid because they are anticipated by publicly available products from 2003.  The Secondary Defendants also argue that the D'510, D'753, and D'291 Patents are invalid because they are not entitled to the priority dates they claim and are anticipated by publicly available products that were on sale before the priority dates that the Patents are actually entitled to.

Invalidity is an affirmative defense that a defendant has the burden of proving by clear and convincing evidence.  <u>Tech. Licensing Corp. v. Videotek, Inc.</u>, 545 F.3d 1316, 1327 (Fed. Cir. 2008).  A plaintiff is not required to "plead around" affirmative defenses, <u>Hyson USA, Inc. v. Hyson 2U, Ltd.</u>, 821 F.3d 935, 939 (7th Cir. 2016), so it is usually inappropriate to dismiss a claim under Rule 12(b)(6) on the basis of an invalidity defense.  <u>Midwest Innovative Prod., LLC v. Kinamor, Inc.</u>, No. 16-CV-11005, 2017 WL 2362571, at *5 (N.D. Ill. May 31, 2017).  The only exception to this general rule applies when "the allegations of the complaint . . . set forth everything necessary to satisfy the affirmative defense." <u>United States v. Lewis</u>, 411 F.3d 838, 842 (7th Cir.2005).  "In other words,

'the plaintiff must affirmatively plead himself out of court.'" <u>Hyson USA</u>, 821 F.3d at 939 (quoting <u>Chi. Bldg. Design v. Mongolian House, Inc.</u>, 770 F.3d 610, 613 (7th Cir.2014)).

Here, Plaintiff has not pleaded itself out of court.  The Secondary Defendants' invalidity arguments with respect to the D'678 and D'291 patents request that the Court construe the patent claims at issue and compare the asserted designs to the prior art, evaluating the relative similarity of the designs.  The Court will not weigh and evaluate evidence in this manner on a 12(b)(6) motion because determination of the substantive merits of Plaintiff's claims is a matter for trial or for summary judgment under Rule 56.  <u>See</u> <u>In re Bill of Lading Transmission & Processing Sys. Pat. Litig.</u>, 681 F.3d 1323, 1343 (Fed. Cir. 2012) (noting that "claim construction at the pleading stage—with no claim construction processes undertaken" is "inappropriate"); <u>see also</u> <u>Novartis Pharm. Corp. v. Actavis, Inc.</u>, No. 12-CV-366, 2012 WL 6212619, at *7-8 (D. Del. Dec. 5, 2012) (collecting cases and concluding that claim construction "is inappropriate at the pleading stage").

The Secondary Defendants' anticipation arguments regarding the D'510 and D'753 patents are also premature.  These arguments depend on materials from outside of the pleadings, namely the patent application information for the D'510 and D'753 patents. While some courts have taken judicial notice of the prosecution histories of asserted patents, <u>see, e.g.</u>, <u>Lecat's Ventriloscope v. MT Tool & Mfg.</u>, No. 16-CV-5298, 2018 WL 3651592, at *3 (N.D. Ill. Aug. 1, 2018), courts have refused to do so  when defendants "improperly seek[] resolution of issues on the merits" in a 12(b)(6) motion by "seek[ing] to admit materials outside the complaint to resolve matters of claim construction and invalidity based on anticipation and priority—matters typically resolved at later stage of litigation."  <u>Midwest Innovative</u>, 2017 WL 2362571, at *2; <u>see</u> <u>Video Gaming Techs., Inc. v. Castle Hill Studios LLC</u>, No. 17-CV-454, 2018 WL 284991, at *3 (N.D. Okla. Jan. 3, 2018); <u>Facebook, Inc. v. Teachbook.com LLC</u>, 819 F. Supp. 2d 764, 772 (N.D. Ill. 2011).  Accordingly, the Court finds that Plaintiff has adequately stated claims against the Secondary Defendants for infringement of the four asserted design patents.

## IV. CONCLUSION

For the reasons stated above, Defendant Lowe's motion to dismiss or transfer (d/e 42) is DENIED.  The partial motion to dismiss (d/e 44) filed by the Home Depot Defendants and the partial motion to dismiss (d/e 54) filed by Defendant Menards are likewise DENIED.


**ENTERED:  November 30, 2021**

**FOR THE COURT:**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**